WILLIAM ROTCH, administrator, *vs.* WILLIAM C. LORING & another, executors, & others.

Suffolk.    December 2, 1896. — September 29, 1897.

Present : FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Will — Termination of Trust — Heirs at Law — Residue — Remainder.*

A testator made by will no pecuniary bequest to his wife, but gave her his city house for life and the household furniture, etc. absolutely, and his country house for life and the household furniture, etc., the property given for life to

be disposed of at her death "as part of the residue of my estate in the manner hereinafter directed concerning the same." He directed that there be deposited with a certain corporation $100,000 for each of his three daughters, the income to be paid to each for life, and upon the decease of each the deposit to be paid over "to her children then living," and the issue of any deceased child by right of representation, and in default of any lawful issue then living of such daughter to be paid over "to my heirs at law, as part of the residue of my estate in the manner hereinafter directed concerning the same." He also directed that $100,000 be deposited with the same corporation for each of his two sons, A. and L., the income of each fund to be paid to each son during life, free from the interference of creditors and without the power of anticipation, and on his decease leaving a will to pay over the whole fund "to the children of such deceased son then living, and to the issue of any deceased child by right of representation, . . . and in default of any issue or children of such son then living" to pay over the fund "to my heirs at law, as hereinafter provided." The residuum included "all such estate, property, funds, and moneys as shall from time to time become part of the residue of my estate, under the provisions of this my will." The testator directed that the residue be divided into so many equal shares that there might be one share set aside for "each of my children then living"; and then, after the paragraphs containing the bequests of the residue, he gave one of the shares "to each of my sons living at the time of my decease" absolutely, and also gave one share for each of his daughters living at his decease to trustees. The will also contained an obscurely worded provision as to the *cestuis que trust. Held,* on the death of A. leaving a will, that the $100,000 held by the corporation in trust for him during life fell into the residue, and was to be divided into five equal parts, of which one part belonged to A., and was to be paid to the executors of his will, one part was to be paid to L. absolutely, and the three remaining parts were to be paid to the trustees, one part to be held in trust for each of the daughters.

BILL IN EQUITY, by the administrator with the will annexed of the estate of Benjamin S. Rotch, to obtain the instructions of the court as to the construction of the will. Hearing before *Morton*, J., who reserved the case upon the bill, answers, and an agreed statement of facts, for the consideration of the full court. The facts appear in the opinion.

*T. N. Perkins*, for William C. Loring and Abbott Lawrence Rotch, executors of the will of Arthur Rotch, submitted the case on a brief.

*M. Storey & J. L. Thorndike*, for the daughters of the testator.

*F. C. Lowell*, for the trustees under the will of Benjamin S. Rotch.

*L. M. Stockton*, for Augustus Lowell, administrator of the estate of Annie B. Rotch.

*H. W. Swift*, for Abbott Lawrence Rotch personally, and for the guardian *ad litem* of Thomas and Aimée Lamb.

FIELD, C. J.   This is a bill for instructions, brought by the administrator with the will annexed of the estate of Benjamin S. Rotch, who died on August 19, 1882.   The bill relates to the $100,000 which was placed in the care of the Massachusetts Hospital Life Insurance Company for the benefit of Arthur Rotch, the testator's son, pursuant to the directions contained in the fourth article of the will.   Arthur Rotch died testate on August 15, 1894, leaving no issue, and the executors of his will are made defendants.   Of the other children of the testator who survived him, Edith, Aimée, Annie L., and Abbott Lawrence were living at the time of the filing of the bill, and are made defendants.   Edith never married; Aimée has no issue; and Thomas Lamb and Aimée Lamb, the only issue of Annie L., are made defendants, and have appeared and answered by their guardian *ad litem*.   The testator's wife, Annie B., survived him, but died before the death of Arthur Rotch, and the administrator of her estate is made a defendant.   The trustees under the will of Benjamin S. Rotch are also made defendants.   The $100,000 has been paid to the complainant by the Life Insurance Company, and the various claims made upon the complainant are stated as follows.   The executors of the will of Arthur Rotch contend that whether the $100,000 goes directly to the heirs of Benjamin S. Rotch or becomes a part of the residue to be distributed under the residuary clause of his will, one fifth of it vested in Arthur Rotch, as of the time of the death of the testator, and that they as such executors are entitled to this one fifth.   The administrator of the estate of Annie B. Rotch contends that the fund should be distributed among the heirs of Benjamin S. Rotch as of the time of his death, and that as such administrator he is entitled to one third of it as the distributive share of the widow of Benjamin S. Rotch.   The other defendants contend that the fund should be distributed among the heirs of Benjamin S. Rotch who were living when Arthur Rotch died, the three daughters contending that the fund does not fall into the residue, but that their shares should be paid to them outright, and the trustees under the will of Benjamin S. Rotch contending that the fund falls into the residue, and that the shares of the daughters should be paid to the trustees.

The general scheme of the will is as follows.   The testator,

Benjamin S. Rotch, makes no pecuniary bequest to his wife, and he gives in the will the following reason therefor: "As my beloved wife Annie is possessed of an estate sufficient for all her wants, I do not deem it necessary to make her any pecuniary bequest." He gives to her, in the second article of the will, for her life, or so long as she shall desire to occupy it, his mansion house in Commonwealth Avenue, Boston, and substantially all the household furniture and everything pertaining to the household establishment, to be her absolute property. He also gives to her for her life, or so long as she desires to occupy it, his house and the lot of land surrounding it, in Milton, Massachusetts, with its appurtenances and the household furniture contained in it. He directs that these provisions for the benefit of his wife are to be in lieu of dower, and provides that at and upon the decease of his wife the property given her for life "is to be disposed of as part of the residue of my estate in the manner hereinafter directed concerning the same "

In the third article of the will the testator directs his executors to deposit with the Massachusetts Hospital Life Insurance Company $100,000 for each of his daughters, Edith, Aimée, and Annie L., each deposit to be held by the company during the life of the daughter for whose benefit it is deposited, the income to be paid annually to the daughter during her natural life, for her sole and separate use, without the interference of any husband, and without being subject to his debts or control. Then follows this provision: " Upon the decease of each of my said daughters, the deposit made as aforesaid for her benefit shall be transferred, conveyed, assigned, and paid over to her children then living, and the issue of any deceased child by right of representation ; to have and to hold the same to them and their respective heirs, executors, administrators, and assigns forever. And, in default of any lawful issue then living of such daughter, then the same shall be conveyed, assigned, transferred, and paid over to my heirs at law, as part of the residue of my estate in the manner hereinafter directed concerning the same."

In the fourth article of the will the testator directs that $100,000 be deposited with the same Life Insurance Company for each of his two sons, Arthur Rotch and Abbott Lawrence Rotch, to be held by the company " for the benefit of each son

respectively, upon the following trusts, namely," etc. Then follows a provision for the accumulation of the income of the trust fund for his younger son, if he should be a minor at the time of the deposit for his benefit. After the younger son attains full age, the provision for him is the same as that for his older brother, and is substantially as follows. The income of each fund is to be paid to each son during his life annually, for his own use and benefit, free from the control or interference of creditors and from liability in any way for his debts, and without the power of anticipation " by any sale, pledge, or assignment thereof." There is a provision " at and after the decease of each son," in the event that the son " shall have left no will, and shall have left a widow," for the benefit of the widow of such son, which need not be noticed, as Arthur Rotch died testate, and the agreed facts show that his widow is not within the provision. If each son " so dying shall leave a will," etc., then the direction is, " in trust to convey, assign, transfer, and pay over the whole of the said trust fund held for the benefit of such son so dying to the children of such deceased son then living, and to the issue of any deceased child by right of representation ; to hold to them, their heirs, executors, administrators, and assigns forever. And in default of any issue or children of such son then living, then in trust to convey, assign, transfer, and pay over the whole of the said trust fund, or the residue, as the case may be, after deducting therefrom such amount, if any, as may be payable to his widow as aforesaid, to my heirs at law, as hereinafter provided ; to have and to hold the same to them, their respective heirs, executors, administrators, and assigns forever."

The first paragraph of the fifth or residuary article of the will is as follows : " All the rest, residue, and remainder of the estate, real and personal, of which I may die seised and possessed, or to which I may at the time of my decease be in any way entitled, of whatsoever the same may consist or wheresoever situated, not herein otherwise disposed of, including all real estate purchased or acquired after the date of this will, and also all such estate, property, funds, and moneys as shall from time to time become part of the residue of my estate, under the provisions of this my will, I give, devise, and bequeath in the manner following," etc.

Before considering the disposition made by the will of this residue, it may be said that the will abounds in superfluous words, and that the style generally is diffuse. It seems to us manifest that the disposition to be made of the trust fund held for the benefit of each daughter, in the event of such daughter dying and leaving no issue surviving her, was meant to be the same as that of the disposition to be made of the trust fund held for the benefit of each son, in the event of such son dying leaving a will and no issue surviving him, although the language of the will is not precisely the same in both cases. In one case, the direction is that the fund shall be " paid over to my heirs at law, as part of the residue of my estate in the manner hereinafter directed concerning the same," and in the other, the direction is to " pay over the whole of the said trust fund . . . to my heirs at law as hereinafter provided; to have and to hold the same to them, their respective heirs, executors, administrators, and assigns forever." We think that the testator had these provisions in mind when, in the beginning of the fifth article, he included in the residue of his estate " all such estate, property, funds, and moneys as shall from time to time become part of the residue of my estate, under the provisions of this my will," etc.

The second paragraph of the fifth article, which immediately follows the first paragraph we have quoted, is as follows: " I direct that the said residue of my property and estate shall be divided into so many equal shares or parts that there may be one share set apart and appropriated for the benefit of each of my children then living, and one share or part for the benefit of the lawful issue then living of every deceased child of mine; such issue of every deceased child taking by right of representation, in the manner hereinafter provided, the share or part of which, which his, her, or their parent, if then living, would have been entitled." Then follow the paragraphs containing the bequests and devises of the residue, the first clause of which is as follows: " And I hereby give, devise, and bequeath one of the said shares or parts of the said residue of my estate to be set apart as aforesaid, to each of my sons living at the time of my decease to have and to hold the same to him or them, such male issue, as the case may be, and his or their respective heirs, executors, administrators, and assigns forever."

The first clause of the paragraph containing the bequests and devises for the benefit of the daughters begins as follows: " I give, devise, and bequeath the share of each of my daughters living at my decease, and the share of each and every of the female issue living at my decease of any child of mine who may die before me, to my trustees," etc.

It is important to determine to what period of time the phrase " then living" relates; it occurs three times in the second paragraph of the fifth article. In the preceding paragraph of this article the only period of time referred to is " the time of my decease," and this is the time referred to in the paragraphs immediately following the second paragraph. The second paragraph seems to us to mean that the residue of the property shall be divided into equal shares, and one share shall be set apart and appropriated for the benefit of each of the children of the testator living at the time of his decease, and one share for the lawful issue living at the time of his decease of each of his children who may have died before his decease, such issue taking their parent's share by right of representation. It does not appear that any of the children of the testator died before his decease, leaving issue. This residue, then, is to be divided into five equal shares, one share to be set apart for each of his five children.

The testator proceeds in the first of the following paragraphs to give absolutely one share to each of his sons living at the time of his decease, with certain provisions concerning the male issue of any deceased child, which need not be particularly noticed. In the next paragraph he gives one share for each of his daughters living at his decease to trustees, with certain provisions concerning the female issue of any child who may die before his decease. The trust for each daughter is in substance to pay over the net income to the daughter during her natural life, for her sole and separate use, and at and upon her decease to convey the trust property held for the benefit of such daughter to her lawful issue then living in equal parts to her children, and to the issue of any deceased child taking by right of representation, and in default of any issue then living of such daughter, then to the testator's heirs at law. Concerning the male and female issue surviving the testator of children who deceased

before him, there are provisions that if any male issue shall at the time of the testator's decease be under the age of twenty-two years, his share shall be held in trust until he reaches the age of twenty-two years, and that then the share shall be conveyed to him absolutely; if such issue die under the age of twenty-two, leaving lawful issue, then the share is to be conveyed to such issue; but if he leave no lawful issue, then it shall be conveyed absolutely to his brothers and sisters, if any, but if there are no brothers and sisters, then to the testator's heirs at law. Upon the death of any female issue surviving the testator of any of his children who deceased before him there are somewhat similar directions. The paragraph ends with the provision that, if any child of the testator's daughters shall at the decease of such daughter be under age, the share of such child shall be held in trust until full age, the income to be paid to the guardian of the child until it reaches full age, when the share shall be conveyed absolutely to the child; but if any such child shall die under age, leaving no lawful issue living, then the share shall be paid "to his or her brothers and sisters, if any, but otherwise to my heirs at law."

After giving to his trustees ample powers for the filling of any vacancies in the trust, the testator proceeds as follows: " It is my will that the *cestuis que trust*, to whom income is payable under this will for their respective lives, or for any less period, are not to have or exercise any right or power of disposing of their respective interests, title, or property in their respective trust estates by will or testamentary appointment, nor to sell, pledge, assign, or transfer the same; it being my intention that said annuitants or *cestuis que trust* shall take an interest for life or term of years, as the case may be, with remainder to their or my heirs respectively, as the case may be." The whole meaning of this clause is not entirely clear. That a *cestui que trust* should not dispose of income payable to him only during his life by " will or testamentary appointment," hardly requires a prohibition; that he should not dispose of it during his life is in accordance with the trusts created for the sons by the fourth article of the will. It is doubtful if by this clause the testator intended to affect the disposition to be made of the remainders after the termination of the trust estates which were to go to

the heirs of the *cestuis que trust* or to "my heirs respectively, as the case may be." At all events, the meaning of this clause seems to us too uncertain to control the other provisions of the will.

We are of opinion that the provision in the third article of the will, that on the decease of any one of his surviving daughters leaving at the time of her death no lawful issue then living, the $100,000 held in trust for her shall be "paid over to my heirs at law as part of the residue of my estate, in the manner hereinafter directed concerning the same," means that such share shall be paid in to the residue to be distributed among the testator's heirs at law as a part of the residue; and that the same construction should be given to the last clause of the fourth article of the will, whereby on the decease of each of his sons leaving no issue then living, (the provision concerning the son's widow having become operative,) the trust fund of $100,000 held for each son is to be paid over "to my heirs at law, as hereinafter provided." Immediately in the next article he makes provision for the disposition of all the remainder of his estate for the benefit of each of his children living at his decease, and for the benefit of all the issue then living of any child of his who should die before his decease. These, technically speaking, would be his heirs at law, and his only heirs at law at the time of his death. In order that there should be no doubt of what he means by the residue of his estate he expressly includes in it "all such estate, property, funds, and moneys as shall from time to time become part of the residue of my estate under the provisions of this my will." These words are not satisfied by confining them to the remainders in his mansion house in Commonwealth Avenue and in his house in Milton, in which he had given to his wife an estate for her life or so long as she desired to occupy them. If it be held that he gave to his wife only a life estate in the household furniture in the house in Milton, still this would not render necessary the broad language of the residuary clause. Besides, he had expressly provided, near the end of the second article of the will, that upon the decease of his wife the above mentioned property given to her only for life "is to be disposed of as part of the residue of my estate, in the manner hereinafter directed concerning the same." The words in the

residuary clause, "all such estate, property, funds, and moneys as shall from time to time become part of the residue of my estate under the provisions of this my will," must, we think, be held to include the funds and money which under the third and fourth articles of the will he had in certain events directed to be paid over to his heirs at law as "a part of the residue of my estate, in the manner hereinafter directed concerning the same," or "as hereinafter provided." It is only by statute that a widow is ever strictly speaking an heir at law of her husband, and by existing statutes she is such only when he dies leaving no issue living, or no kindred, which is not this case. Pub. Sts. c. 124, § 3.

The contention of the administrator of the estate of the widow of Benjamin S. Rotch in effect is that the words "heirs at law," in the fourth article of the will, as they relate to the devolution of personal property, must be taken to mean distributees of personal estate, and that, as the widow would have been entitled to one third of the personal estate of the testator if he had died intestate, the administrator of her estate is entitled to one third of the $100,000. But as we are of opinion that the words "heirs at law" in the fourth article of the will must be held to mean heirs at law as defined in the fifth article, disposing of the residue of the estate in which no provision is made for the testator's wife, the argument in behalf of her estate becomes inapplicable.

Upon the question whether the heirs at law of the testator who take the residue are to be determined as of the time of his death or as of some subsequent time, we think that the language of the first part of the residuary clause is reasonably specific. There are certain ulterior limitations in the residuary article of the will, in certain events, to the testator's heirs at law, which we have noticed, with regard to which it is not now necessary to express any opinion, but the principal direction found in the second paragraph of the residuary article is, as we interpret it, that the residue shall be divided into equal shares, and one share shall be set apart and appropriated for the benefit of each of the children of the testator living at the time of the testator's decease; and one share for the benefit of the lawful issue living at the time of the testator's decease of any child of the testator

who should die before his death. It is generally true that when property is given by will to one for life, with remainder to the testator's heirs at law, and the life tenant is only one of the heirs at the death of the testator, the life tenant is not excluded from taking a share of the remainder, unless there are clear expressions in the will to the contrary. See *Fargo* v. *Miller,* 150 Mass. 225. But we think it unnecessary to discuss the general doctrine here, because we regard the direction as express that the residue shall be divided into shares for each of the children of the testator living at the time of the testator's death.

The $100,000 held by the Massachusetts Hospital Life Insurance Company in trust for Arthur Rotch during his life, in the event which has happened falls into the residue of the estate of Benjamin S. Rotch, and is to be divided into five equal parts, of which one part belongs to the estate of Arthur Rotch and is to be paid to the executors of his will; one part is to be paid to Abbott Lawrence Rotch absolutely ; and the three remaining parts are to be paid to the trustees, to be held in trust for the daughters Edith, Aimée, and Annie L., one part for each, according to the provisions for their benefit in the residuary article of the will.                          *Decree accordingly.*