WILLIAM ROTCH & others, trustees, *vs.* ABBOTT L. ROTCH & others.

Suffolk.    December 9, 1898. — March 16, 1899.

Present: FIELD, C. J., HOLMES, MORTON, BARKER, & HAMMOND, JJ.

*Devise and Legacy — Heir at Law — Termination of Trust.*

A testator by his will directed that there be deposited with a certain corporation a sum named for each of his three daughters, the income to be paid to each for life, and upon the decease of each the deposit to be paid over to her children then living, and in default of any lawful issue then living of such daughter to be paid over " to my heirs at law, as part of the residue of my estate, in the manner hereinafter directed concerning the same." He made a similar provision for each of his two sons, the fund, in default of issue, to be paid over " to my heirs at law, as hereinafter provided." One of the sons died after the testator's death, and his share of the fund was distributed according to a former decision of this court. The testator also directed that the residue of his estate be divided into so many equal shares that there might be one share set aside for " each of my children then living," giving one share to each of his sons absolutely, and

one share for each of his daughters in trust, to pay the income to her during life, and on her decease to convey the trust property to her issue, and in default of issue to convey the same "to my heirs at law, to hold the same to them, their heirs, executors, administrators, and assigns forever." The will also contained the following clause: "It is my will that the *cestuis que trust,* to whom income is payable under this will for their respective lives, or for any less period, are not to have or exercise any right or power of disposing of their respective interests, title, or property in their respective trust estates by will or testamentary appointment, nor to sell, pledge, assign, or transfer the same; it being my intention that said annuitants or *cestuis que trust* shall take an interest for life or term of years, as the case may be, with remainder to their or my heirs respectively, as the case may be." E., one of the daughters, died after the testator's death, unmarried and without issue, leaving a will, under which C. was the executrix and residuary legatee. Before the death of E. the interest of her deceased brother had been sold to her and to the three other surviving children of the original testator in equal shares. *Held,* that those persons took the remainders given to the testator's "heirs at law" who were his heirs at his decease; that C., as executrix and residuary legatee, and aside from the purchase of the share of the deceased son, was entitled to receive a one fifth part of the fund invested for E., and no more; that the share of the residue held in trust for E. by the trustee before her death was to be divided into four equal shares for the benefit of her surviving brother and two sisters and C.; and that the shares of the two sisters, as well as those of the brother and C., were to go to them absolutely, free of trusts.

BILL IN EQUITY, filed November 23, 1897, by the trustees under the will of Benjamin S. Rotch, to obtain the instructions of the court as to the construction of the will.* Hearing before *Morton,* J., who, at the request of the parties, reserved the case for the consideration of the full court. The facts appear in the opinion.

*L. M. Stockton,* for the trustees, read the papers in the case.

*H. W. Swift,* for Abbott Lawrence Rotch.

*W. C. Loring, (T. N. Perkins* with him,) for Mary Carey.

*H. D. Chapin,* for Thomas and Aimée Lamb.

BARKER, J. The executors of the will of Benjamin S. Rotch obtained the instructions of this court as to the construction of his will in the case reported under the name of *Rotch* v. *Loring,* 169 Mass. 190. The testator left a widow, two sons, and three daughters. The petition in *Rotch* v. *Loring* was made after the death of the widow and of one son, the deceased son having died testate and leaving a widow and no issue. In that case the

---

* Certain provisions of the will stated in the head-note to this case, and not appearing in the opinion, are to be found in the former decision, 169 Mass. 190.

principal question was as to the disposition of a fund which the testator had directed to be deposited for his deceased son, to whom the income was payable during the son's life, with provisions for the disposal of the fund at the son's death, under which the court held that the fund then fell into the residue, and was to be divided into five equal parts, of which one part belonged to the deceased son, and was to be paid to the executors of his will, one part was to be paid over to the other son, and the three remaining parts were to be paid to the trustees who were appointed to hold the residue of the testator's estate in trust, and that one of those parts was to be held by those trustees in trust for each of the testator's three daughters, as provided in his will. In that decision the general scheme of the will is stated. The ground of the decision was that in the concluding clause of the fourth article of the will, which provided that, in case the son who had the income of the fund for his life should die without children or issue, so much of the fund as should not be payable to the son's widow should be paid over to the testator's heirs at law, the gift was to those persons who at the time of the testator's death were his heirs at law.

Since the former decision, all the share and interest to which the deceased son at the time of his death was entitled in reversion or otherwise under the will in the shares of the residue of his father's estate given by the father's will in trust for his daughters has been sold and transferred by deed to the brother and the three sisters of the deceased son in equal shares. One of these three sisters, Edith Rotch, has now died unmarried and without issue, leaving a will, which has been duly proved and of which the respondent Mary Carey is executrix, and under which, aside from certain legacies immaterial to the present petition, she is entitled to all the estate of her testatrix. Under the third article of the will of Benjamin S. Rotch the sum of $100,000 was invested in a corporation for his daughter Edith, to be held by the corporation during her life. The direction of the will as to the disposition of this fund at the daughter's death is that " the deposit made as aforesaid for her benefit shall be transferred, conveyed, assigned, and paid over to her children then living, and the issue of any deceased child by right of representation; to have and to hold the same to them and their

respective heirs, executors, administrators, and assigns forever.
And in default of any lawful issue then living of such daughter,
then the same shall be conveyed, assigned, transferred, and paid
over to my heirs at law, as part of the residue of my estate, in
the manner hereinafter directed concerning the same." After
the death of Edith Rotch this sum of $100,000 was paid over
to the administrator *de bonis non* with the will annexed of her
father's estate, and that administrator has transferred one fifth
part of the fund less his charges and expenses to the present
petitioners, who are the trustees of the residuary estate of Ben-
jamin S. Rotch under the fifth article of his will. What has
been done with the rest of the fund so invested for Edith Rotch
we are not informed. We understand that the one fifth as to
the disposition of which we are now asked to direct is the share
which would go to Edith Rotch as one of the five persons who
were heirs at law of Benjamin S. Rotch at his decease, upon the
theory that the clause above quoted from the third article of the
will gives that fund upon the death of Edith Rotch without issue
to the persons who at the death of Benjamin S. Rotch were his
heirs at law. The court is asked to direct the petitioners what
to do with that one fifth of the fund, and is not asked to direct
them as to the disposition of the other shares of that fund, nor
do those shares appear by this petition to be in the hands of the
petitioners. Of course it cannot be contended that in any event
Edith Rotch, as one of the five heirs at law and apart from pur-
chase, is entitled to more than one fifth of this $100,000 which
up to her death was held for her use by the life office, which
$100,000 then passed to the residue for the purpose of distribu-
tion among the testator's five heirs at law. No part of this
$100,000 was in the custody of the present petitioners during
the life of Edith Rotch, and their right to deal with it upon her
death attached to the whole sum, and not to one fifth part of it
merely.

The other matter upon which the petitioners ask the instruc-
tion of the court is as to the disposition now to be made by
them of that share of their testator's residuary estate which
until the death of Edith Rotch they held for her benefit under
the fifth article of the will. The general effect of this article
was to divide the residue of the testator's property into five

equal shares, one of which was set apart and appropriated for the benefit of each of the testator's five children who survived him. The shares of the three daughters were by the fifth paragraph of this article devised and bequeathed to trustees, of whom the petitioners are the successors, upon trusts with reference to which that paragraph contains these words: " To hold the same to them and their assigns, the survivors of them, and their assigns, and the survivor of them, his heirs, executors, administrators, and assigns, in strict trust for the uses and purposes following, namely, to hold, manage, and improve to the best advantage, and in the manner herein directed, the part, share, or portion of each such daughter . . . during her natural life, and to pay the net rents, income, dividends, and profits to her half yearly, or oftener if convenient, in every year during her natural life, for her sole and separate use, upon her own separate receipt free from the interference of any husband, and without being subject to his debts, engagements, or control ; and her receipt for all payments made to her, whether married or sole, shall at all times be a sufficient release and discharge therefor. And at and upon her decease, then in trust to convey in fee simple, transfer, assign, and deliver to her lawful issue then living the property and estate then held by the said trustees for her benefit, of whatever the same may then consist, in such and so many equal parts that each of her children then living may receive one share or portion, and the lawful issue then living of any deceased child of hers may together receive and hold, by right of representation, the same share or portion to which his, her, or their parent, if then living, would be entitled ; to hold the same to them respectively, and their respective heirs, executors, administrators, and assigns forever. And in default of any issue then living of such daughter . . . then in trust to convey in fee simple, assign, transfer, and deliver the said trust property held by them for the benefit . . . of such daughter, to my heirs at law, to hold the same to them, their heirs, executors, administrators, and assigns forever."

The particular questions raised as to this share of the residue held for the benefit of Edith Rotch until her death are (1) whether the share shall be divided into three equal parts for the benefit of the original testator's surviving son and of the

two surviving daughters, or into four equal parts for the benefit of the son and the daughters and of the residuary legatee of Edith Rotch, and (2) whether the two surviving daughters of the original testator are entitled to their respective shares absolutely, or whether the same are to be held in trust for their benefit during their respective lives by the petitioners. The chief factors in the determination of the questions presented are to ascertain whether the testator's gifts to his heirs at law in the third article of his will, and in the part above quoted of the fifth article, are to those persons who were at his decease his heirs at law. The whole will contains five clauses in which gifts over after particular estates are given to the testator's heirs at law. That one of these five clauses which occurs in the fourth article was held in the former decision to intend by the words " to my heirs at law " the persons who at the testator's death were his heirs by blood, namely, his two sons and three daughters. In making that decision the other instances in which the same phrase was used were noticed, and it was said of them that it was not then necessary to express any opinion with regard to them. We are now of opinion that the same words, " to my heirs at law," must be given the same meaning in the third article of the will, and in the clause above quoted from the fifth article. In other words, in each of these three instances the heirs of the testator to whom the remainder was given were his heirs to be determined as of the time of his death.

We see nothing in the language of the whole will, or in the circumstances of the testator so far as they are disclosed, which leads us to think that he used the phrase " to my heirs at law" with different meanings in these three instances. The first of them disposed of the remainder in three trust funds of $100,000 each, invested for the benefit of the testator's daughters respectively for their respective lives, and said that upon the death of a daughter who should die without issue then the same shall be " paid over to my heirs at law, as part of the residue of my estate in the manner hereinafter directed concerning the same." The second, which is the one which has been before construed, disposed of the remainders in similar trust funds held by the same depositary for the benefit of the testator's sons during their respective lives, and provided that,

in default of issue of such son living at the son's death, the trustees should pay over the fund " to my heirs at law, as hereinafter provided." The third provides for the disposition of the shares of the residuary estate held in trust for the benefit of the daughters respectively for their respective lives, and in case a daughter dies without leaving children or issue, says that in such case the trustees shall convey the share to the testator's heirs at law, — " to my heirs at law." Each of the testator's sons and daughters who survived him would be one of his heirs at law. As often as a death occurred upon which a gift to the testator's heirs at law would become operative under either of these three clauses, there must be of necessity a change in the persons who constituted the testator's heirs at law, if determined as of the time of the happening of the death of the son or daughter. If, as the testator no doubt anticipated, he should die leaving the two sons and the three daughters who were living when the will was made, he must have anticipated that at the death of each in turn there might be occasion under these clauses of his will to pay over trust funds to those whom the testator designated by the phrase " to my heirs at law." The slightest reflection would show a testator that, if he wished that of such of his children as might be living at his death none should have power over the trust property unless they were living when the particular estates fell in, he must do more than provide simply that the remainders should go to his heirs at law, whom he expected or at least hoped would be all his five children. Nor do we see anything in the general scheme of the will, or in its other provisions, which shows us that in the clauses which we are to construe, the testator meant by the words " to my heirs at law " his heirs to be determined as of any other time than as of the time of his own death. A later clause of the fifth article, appearing between the clause which nominates trustees and that which nominates executors, is relied on by those of the respondents who contend that the testator's heirs at law are to be determined for the purposes of this case as of the time of the death of Edith Rotch. That clause is as follows : " It is my will that the *cestuis que trust* to whom income is payable under this will for their respective lives, or for any less period, are not to have or exercise any right or power of disposing of their respective interests, title, or property

in their respective trust estates, by will or testamentary appoint-
ment, nor to sell, pledge, assign, or transfer the same ; it being
my intention that said annuitants or *cestuis que trust* shall take
an interest for life or term of years, as the case may be, with
remainder to their or my heirs respectively, as the case may be."
Here again the testator uses the single expression " my heirs "
to designate the persons who are to take upon the many possible
occasions when a life tenant may die without leaving children
or issue.   This clause was quoted and commented upon in the
former decision, and it was there said that its meaning seemed
to us too uncertain to control the other provisions of the will.
We remain of that opinion.   Each of the testator's children
answered to the description of a *cestui que trust* to whom income
was payable under the will for life.   There might be " *cestuis
que trust* " or " annuitants " whose power over the funds held for
their benefit was not explicitly restricted in the clauses of the
will which made them possible legatees or devisees.   The clause
may have been intended to operate upon those cases.   It may
have been intended to forbid a son or a daughter who had a life
estate in a trust fund for his or her benefit to convey or to dis-
pose by will of the remainder given by the will to the son or the
daughter as one of the testator's heirs at law, and if so it would
be void as inconsistent with the gift.   But clearly it does not
purport to say, and cannot be held to mean, that, wherever in his
will the testator has made gifts to his heirs at law, those heirs
are not to be determined as of his death, but as of the time when
the respective particular estates shall fall upon the determination
of which the gifts over to his heirs at law are made.   The tes-
tator had an estate which he intended primarily and chiefly for
the benefit of his children.   He had a wife who had an estate of
her own " sufficient for all her wants," and which, considering
the position in life of the family, must also have been large.
The testator shows an anxiety that all his children shall have
from his estate some income of which they cannot be deprived
during life, and that his daughters shall have for their respective
lives the income of their respective equal shares of his estate
free from all interference and control and from all power of
anticipation.   If he had desired to make it impossible for any of
them to have the disposition of any part of what he should him-

self leave in trust, the construction that he meant by the words " to my heirs at law " heirs to be determined as of some other time than as of that of his own death, would not have made that intent effectual.   If we should give the words that construction, it would yet result that in every case of the death of a child of his some of the property held in trust to that time must be payable absolutely to some child of his.   It is reasonable to suppose that, having made provision for the benefit of each of his daughters during all her life, and for her issue if she should have children, he was content, if she left no issue, to let her share go as the law might direct.   The testator in one sense treats all his children with substantial equality, dividing his estate if, as he must have anticipated, the five children should survive him, into five equal shares, one of which was given to or for the benefit of each child.   The direction that when a fund which he had put in trust had fulfilled all the possible purposes of the trust, and was not then otherwise limited, it should go to those who when he died were his heirs at law, tended to carry out to the end this scheme of equality among his children, which giving the ultimate remainders to those who should be his heirs when the several trusts should terminate would defeat.   Looking at the particular clauses now to be construed, and to other provisions of the will in which similar language is used, or which may have been inserted to serve as guides to the testator's meaning, and also to the whole scope of the instrument, we are of opinion that in these two instances with which we are now particularly concerned, in which the testator gave remainders to his heirs at law, those persons took who were his heirs at his decease.   See *Minot* v. *Tappan*, 122 Mass. 535; *Dove* v. *Torr*, 128 Mass. 38; *Whall* v. *Converse*, 146 Mass. 345; *Heard* v. *Read*, 169 Mass. 216, 222, 223, and cases cited.

The petitioners should therefore be instructed that they should pay over to Mary Carey as executrix and residuary legatee and devisee of the will of Edith Rotch the one fifth part of the fund of $100,000 invested for her benefit in the Massachusetts Hospital Life Insurance Company, concerning which one fifth of said $100,000 the petitioners now ask for instructions, and that Mary Carey as executrix of the will of Edith Rotch is not now entitled to receive in the right of said Edith as an heir at law

of the testator Benjamin F. Rotch any further part of said fund of $100,000. Also that they should divide the share of the residue of their testator's estate, held by them in trust for Edith Rotch up to the time of her decease, into four equal shares for the benefit of Abbott Lawrence Rotch, Aimée Sargent, Annie L. Lamb, and Mary Carey, and that the petitioners should pay over, transfer, and convey one of the four equal shares to Abbott Lawrence Rotch and one to Mary Carey.

The remaining question is whether the testator's surviving daughters, Aimée Sargent and Annie L. Lamb, shall take their one fourth parts of this fund absolutely, or whether it shall be held by the petitioners in trust for them respectively. As to this fund, we regard the language of that paragraph of the fifth article of the will which directs that, in the contingency which has now occurred, the fifth of the testator's residuary estate theretofore held by the petitioners for the benefit of Edith Rotch shall go to the testator's heirs at law, as clear and explicit, and uncontrolled by any other provision of the will. That language applied to the circumstances now existing directs the petitioners, upon the death of Edith Rotch without issue, to deliver the trust property held by them for her benefit to the testator's heirs at law, to hold the same to them, their heirs, executors, administrators, and assigns forever. In the contingency which has occurred, this is the final winding up of their trust so far as that property is concerned which at the death of Edith Rotch they held for her benefit, and as to that property the two surviving daughters of the testator take not as *cestuis que trust*, but as heirs at law of the testator, and so free of trust.

The petitioners should be instructed further that they should pay over, transfer, and convey to Aimée Sargent, as her own property free of trusts, one equal fourth part of that share of the trust property held by them for the benefit of Edith Rotch, and that they should pay over, transfer, and convey the other equal one fourth part of that property to Annie L. Lamb, as her own property free of trust.

*So ordered.*