FRANK O. BELDING ET ALS.   IN EQUITY

*vs.*

MABEL R. COWARD ET ALS.

Hancock.   Opinion June 15, 1926.

*It is an established rule, in construing devises, that all estates are to be holden to be vested except estates in the devise of which a condition precedent to the vesting is so clearly expressed that the courts cannot treat them as vested without deciding in direct opposition to the terms of the will.*

*Where there is a bequest to a child, it is a general rule that there is a vested interest unless the contrary intention is shown by the will.*

*The presumption that the legacy was intended to be vested applies with far greater force where a testator is making provision for a child or a grandchild than where the gift is to a stranger or a collateral relative.*

*By the common law a vested interest is descendible, devisable and alienable.   This common law rule has not been modified by our Legislature.*

In the instant case the younger son having died before reaching the age of thirty-five years, his vested interest would pass to his older brother under the provision of law relative to descendibility of vested interests; and by the terms of the will that interest would also pass, since the testator expressly provided that at the termination of the trust, if there be but one son surviving, then the whole of the estate is to be paid to that survivor.

The older son made a will before the time at which the trust terminated under the father's will, but since a vested interest may be devised, then the will of the older son operated, not only upon his own vested interest, but the vested interest of his younger brother which had passed by due process of law to the older brother.

At the death of the older son the trust became a mere passive, dry, naked trust, and his devisees are entitled to have the property transferred at once.

On report.   A bill in equity seeking the construction and interpretation of the will of Charles Fry, a resident of Bar Harbor, who died September 3, 1910.   The principal questions involved were whether the interests of two sons of testator as legatees were contingent or vested interests.   A hearing was had on bill and answer, and by

agreement of the parties the cause was reported to the Law Court. Bill sustained and decree in accordance with the opinion.

The case fully appears in the opinion.

*Frank O. Belding of Boston, Massachusetts,* for complainants.

*Lynam & Rodick and Hale & Hamlin,* for respondents.

SITTING: WILSON, C. J., PHILBROOK, DUNN, MORRILL, STURGIS, BASSETT, JJ.

PHILBROOK, J.   The complainants, Frank O. Belding and Frederic M. Burnham, are administrators d. b. n. c. t. a., of the estate of Charles Fry, and executors of the will of John Fry, son of Charles.

Charles Fry died September 3, 1910, leaving no widow. There survived him two sons, John and Charles, Jr., also two sisters, Elizabeth Fry Ridgway and Isabel Fry Norris. His will was dated January 20, 1910.

Isabel died January 20, 1922, intestate, her husband having predeceased her, leaving as her heirs at law, J. Parker Norris, Henry Norris, Edith Norris Shober, John R. Norris, Mary Norris Biggs, Philip Norris, Alice Norris, and William P. Norris.

Elizabeth died June 19, 1925, intestate, her husband having predeceased her, leaving as her heirs at law Mabel R. Coward, Violet R. Jaeckel, and Thomas Ridgway.

These heirs of Isabel and Elizabeth, eleven in number, are all impleaded, and, for convenience and brevity of expression, may be referred to as the first group of defendants.

The second group of defendants are devisees under the will of John Fry, son of Charles, namely, trustees of a fund to provide cash prizes for students of the Bar Harbor High School, an endowment fund for a church at Bar Harbor, and a similar fund for the Young Men's Christian Association in the same town.

These two groups make contending claims upon the property in the hands of the complainants and the latter present this bill in equity praying,

*First,* that this court will construe the will of Charles Fry, and particularly as to the rights and interests of the parties arising under paragraph six of said will, and in and to the property covered by said sixth paragraph;

*Second*, that this court will construe the will of John Fry, and particularly as to the disposition of the property in question;

*Third*, that this court will instruct the complainants as to the heirs at law and interest of Charles Fry, Jr., and particularly as to his portion, if any, and the disposition of the estate mentioned in the sixth paragraph of Charles Fry, Sr.

By the first four paragraphs of the will of Charles Sr., he provides for the appointment of executors and trustees, and makes certain minor bequests. In the fifth paragraph he devises to John and Charles Jr., equally, share and share alike, "all my personal property, except stocks, bonds and other securities."

Then follows the paragraph which gives rise to the present controversy and reads as follows:

"Sixth; As to all stocks, bonds and other securities or real estate of which I may die possessed, I direct my said heretofore mentioned trustees, to hold the same with full power to change any investments at their discretion; whether the same be legal investments or otherwise, until the younger of my two sons shall reach the age of thirty-five years, until that time shall arrive, the income therefrom shall be equally divided between the two. If at that time there be but one son surviving, then the whole of that estate is to be paid over to him, but if both be living that the same is to be equally divided between the two, heirs and assigns forever."

The younger of the two sons, Charles, Jr., was born November 18, 1891, and died, intestate, October 9, 1918, at the age of twenty-six years and eleven months. In other words, this younger son did not live to reach the age of thirty-five years mentioned in his father's will. He left no widow nor issue.

The older son, John, was born May 24, 1888, was twenty-two years old when his father died, himself died April 18, 1925, aged thirty-six years and eleven months. He died testate leaving no widow nor issue.

It is alleged in the bill, and admitted by the answers, that the trustees mentioned in the will of Charles, Sr., never qualified for the performance of that duty but that in fact they acted as trustees under the will of Charles Fry, until one of those trustees, Thomas Leaming, died December 14, 1911, and after that date no trustee was appointed and qualified to take his place, and that John, the son of Charles, acted as sole trustee. It is also alleged and admitted that

the income arising under said sixth paragraph was divided equally between the sons, John and Charles, Jr., until the death of the latter, and thereafter the entire income was paid to John until his death on April 18, 1925.

Waiving the technicality of legal qualification of trustees, we have in effect a typical case of an express, active trust before us. Trustees competent to act were named, the cestuis que trustent were designated, the object of the trust was declared, the method of its administration was declared, and a limit of time within legal rules was pronounced. It should be noted, however, that the cestuis and the remainder men are the same persons in this case, hence some decided cases in which the remainder men are other than the cestuis may not be wholly pertinent to the issues here involved.

The first group of defendants declares that the real question is whether this trust property goes to the now heirs of the original testator, Charles Fry, of his own blood, or whether it was acquired by John Fry, (whose heirs in part at least would be on his mother's side and not of Charles Fry's own blood) and whether John Fry has made a valid disposition of this same property under his will to strangers.

The second group of defendants declare the issue somewhat differently, viz., intestacy as to part of Charles Fry's estate developed due to failure of a contingency in his will and lack of a residuary clause, hence a question arises as to whether his heirs at law as of the date of his death or his heirs at law living at the date of the failure of the contingency take the estate which failed.

The "pole star" of testamentary construction is the intention of the testator, when clearly expressed in the will. When so expressed, and it violates no rule of law or public policy, it must be given effect. It overrides precedents and technical rules of construction. *Bradbury* v. *Jackson,* 97 Maine, 449. All rules of construction are designed to ascertain and give effect to the intention of the testator, and that intention is to be ascertained exclusively by the words of the will as applied to the subject matter under the surrounding circumstances. *Andrews* v. *Applegate,* 223 Ill., 535; 79 N. E., 176; 12 L. R. A., (N. S.), 661. The intention of the testator, expressed in his will, must prevail, provided it be consistent with rules of law, and this rule is one to which all other rules must bend, says Chief Justice Marshall in *Smith* v. *Bell,* 6 Pet., 68; 8 U. S., (L. ed), 322. See also

*Methodist Church* v. *Fairbanks*, 124 Maine, 187; *Barry* v. *Austin*,
118 Maine, 51; *Gregg* v. *Bailey*, 120 Maine, 263.

As we have already observed, this will was executed January 20,
1910. At that time John was more than twenty-one years of age,
Charles, Jr. about nineteen. The two sisters, Elizabeth and Isabel,
were both alive. Although there was no paragraph in the will which,
in explicit terms disposed of the residuum of the estate, yet any one
cannot read the instrument without discovering the plain intention
of the testator, under the surrounding circumstances, as to three
things at least; first, taking all parts of the testament into considera-
tion he intended to dispose of his entire estate, leaving none to be
administered as intestate property; second, that exclusive of the
minor legacies mentioned in the second, third and fourth paragraphs,
his two sons and their "heirs and assigns forever" were to be the sole
objects of his testamentary favor; third, that "under the surrounding
circumstances" he did not intend that his sisters or their descendants
should be beneficiaries of his bounty.

Keeping constantly in mind the fundamental rule of testamentary
interpretation above referred to, and the fact peculiar to this case,
namely, that the cestuis que trustent were the only children of the
testator, was the interest created by the sixth paragraph of the will a
contingent or a vested one?

Contingent remainders (whereby no present interest passes) are
those where the estate in remainder is limited to take effect, either
to a dubious and uncertain person, or upon a dubious and uncertain
event; so that the particular estate may chance to be determined
and the remainder never take effect. Vested remainders (whereby a
present interest passes to the party, though to be enjoyed *in futuro*)
are those where the estate is invariably fixed, to remain to a determi-
nate person, after the particular estate is spent, 2 Blackstone 168, 169.
In his work on Real Property, Book II., Page 224, Professor Washburn
says; "The broad distinction between vested and contingent
remainders is this: in the first there is some person *in esse* known and
ascertained who, by the will or deed creating the estate, is to take and
enjoy the estate upon the expiration of the existing particular estate,
and whose right to such remainder no contingency can defeat. In
the second it depends upon the happening of a contingent event
whether the estate limited as a remainder shall ever take effect at all.
The event may either never happen, or it may not happen until after

the particular estate upon which it depended shall have determined, so that the estate in remainder will never take effect." *Woodman* v. *Woodman*, 89 Maine, 128; *Bryant* v. *Plummer*, 111 Maine, 511. But Professor Washburn also declares that a remainder should never be deemed to be a contingent one when it can be construed to be vested, within the intention of the one who creates it. Book II., Page 226.

A legacy or devise should be considered as giving a vested rather than a contingent interest. It has long been an established rule, in construing devises, that all estates are to be holden to be vested, except estates in the devise of which a condition precedent to the vesting is so clearly expressed that the courts cannot treat them as vested without deciding in direct opposition to the terms of the will. If there be the least doubt, advantage is taken of the circumstances occasioning the doubt; and what seems to make a condition is holden to have only the effect of postponing the right of possession. *Kimball* v. *Crocker*, 53 Maine, 263; cited in *Strout* v. *Strout*, 117 Maine, 357.

Where there is a bequest to a child it is a general rule that there is a vested interest unless the contrary intention is shown by the will. *Bryant* v. *Plummer*, supra; *Morse* v. *Ballou*, 109 Maine, 264. *Hicks* v. *Hicks*, (N. J.), 132 Atl., 857.

So strong is the presumption that testators intend the vesting of estates that it is an elementary rule of construction that estates legal or equitable, given by will, should always be regarded as vesting unless the testator has by very clear words manifested an intention that they should be contingent upon a future event. And so clear must be his expression that it is held that in cases of doubt or ambiguity as to the time when it was intended the estate should vest, the remainder will be regarded as vested rather than contingent. *Blaine* v. *Dow*, 111 Maine, 480.

Under the fifth paragraph of the will the testator had devised and bequeathed all his personal property except stocks, bonds and other securities to his two sons, John and Charles, their heirs and assigns, to be equally divided between them, share and share alike.

Under the sixth paragraph, now under examination, a substantial amount of property, real and personal, was to constitute a trust fund, the income of which was to be paid to the two sons in equal shares until the younger should reach an age of presumable discretion. The testator knew that the thirty-fifth birthday of the younger son would occur on November 18, 1926, a date which was sure to be reached

as time moved onward. He might have named that date in explicit words if he had chosen to do so, but he did not, preferring to use the expression "until the younger of my two sons shall reach the age of thirty-five years," an event which might never happen and in fact never did happen. It is natural to assume that the testator, having at the date of his will two boys one of whom was nearing and the other just past the age of majority, expected those boys to live to young or middle manhood, and he expressly provided that if both sons were living when the younger reached the age of thirty-five the trust property was to be equally divided between them and their "heirs and assigns forever," but if only one son were then living the whole of the estate was to be paid to him. In Ruling Case Law, Vol. 23, Page 531, we find the following, supported by authorities: "Since reaching a specified age, which is a common possibility, is not regarded as an uncertain event which will prevent the vesting of an estate, a grant or devise of a remainder to a person named on attaining a specified age, usually twenty-one, creates a vested remainder on the making of the grant or on the death of a testator. A devise will be regarded as vested, and not contingent, if the property is devised to trustees to be by them divided among the children of the testator on the youngest attaining the age of twenty-one years, where the will, taken as a whole, indicates an intention of the father to vest his estate at his death in his then living children, subject to the trust estate in his executors."

The presumption that a legacy was intended to be vested applies with far greater force where a testator is making provision for a child or a grandchild than where the gift is to a stranger or to a collateral relative. *Wengard's Estate*, 143 Pa. St., 615; 22 Atl., 869; *Atchinson* v. *Francis*, 182 Ia., 37, 165 N. W., 587, the latter being a case where the opinion shows much careful research.

In the instant case we hold that the two sons, John and Charles, Jr., took a vested and not a contingent interest in the remainder of the property mentioned in said sixth paragraph of the father's will. The intention of the testator is so plain, which intention is not inconsistent with rules of law, that to it "all other rules must bend." In this conclusion we also recognize the principle, so well established as to require no citation of authorities, that the law favors the vesting of estates, and that, in the absence of any intention of the testator appearing to the contrary, the estate will vest at the time of his death.

By the common law a vested interest is descendible, devisable and alienable, 23 R. C. L., 572. As we are not now considering contingent interests we are not concerned with the provisions of R. S., Chap. 78, Sec. 3. Our Legislature has not modified the common law rule regarding vested interests as above stated. There has never been any question but that vested interests descend to the heirs of the remainderman who dies before the termination of the particular estate. *Waddell* v. *Waddell,* 99 Mo., 338, 17 A. S. R., 575; *Cole* v. *Creyon,* 26 Am. Dec., 208; *Bufford* v. *Holliman,* 60 Am. Dec., 223; *Jones* v. *Knappen,* 63 Vt., 391, 22 Atl., 630. It follows then that the vested interest of Charles, Jr., upon his death, would pass to his brother John, under provision of law relating to descendibility of vested interests.

Another avenue is open through which the interests of Charles, Jr. would plainly pass to his brother John, and that avenue may be found by the terms of the will of Charles, Sr. in the same sixth paragraph which is now being discussed. The testator expressly provides that at the termination of the trust, if there be but one son surviving then the whole of the estate is to be paid to the survivor, each brother besides his vested interest having a contingent interest in his brother's share depending on his survivorship, which became vested in the survivor upon the contingency happening during the period of the trust.

A vested interest can be devised. The authority for this rule is distinctly stated in *Roberts* v. *Roberts,* 102 Md., 131, 62 Atl., 161. This is an outstanding case of such importance and authority that it may be found in III., A. S. R., 344, 5 Ann. Cas., 805, 1 L. R. A., (N. S.), 782. There will also be found in this case, as well as in *Ducker* v. *Burnham,* 146 Ill., 9; 37 Am. St. Rep., 135, learned, exhaustive, and supporting opinions upon the principles which we have herein above discussed. In Ruling Case Law, 576, the author says "There can, of course, be no question but that vested remainders may be devised." We hold, and answer the prayers in this bill as follows:

1. The two sons of Charles Fry, John and Charles, Jr., by the terms of his will took vested interests under said sixth paragraph;

2. That upon the decease of Charles, Jr., intestate, his vested interest passes under the terms of the father's will to John, as the survivor, or, if not so passing by the will, would become vested in John by right of inheritance.

3.   That the vested interest of John, together with the vested interest which he received from his brother, Charles, Jr., was devisable;

4.   That the devisable interests passed by the will of John to the various persons and institutions named in his will;  ·

5.   That the trust terminates on November 18, 1926;

6.   That at John's death it became a mere passive, dry or naked trust, and his devisees are entitled to have the property transferred at once.

7.   Counsel fees to be allowed out of the estate, the amount of such fees to be determined by the Justice below who signs the final decree.

*Decree in accordance*
*with this opinion.*