HOWARD M. COOK, TRUSTEE *vs.* THOMAS C. STEVENS ET ALS.

MARGARET STEVENS CLARK *vs.* GRACE B. STEVENS ET ALS.

Penobscot.    Opinion August 10, 1926.

*The word "Family" as used in a will construed as including a deceased son's*
*deceased daughter's children, but excluding such daughter's living husband, nothing in*
*the will showing a purpose to include relations of affinity.*

It is from testator's death that his will speaks; but in determining testamentary
intent from its language the will should be construed as an entirety, and every
part be reconciled and given effect, if possible, as of the date of its execution,
circumstance illumined by the surroundings that were then extrinsic.

A turning point, or controlling event in the disposition of property by a will,
generally, where there is not express or implied intention to the contrary, will
be construed to relate to time of the death of the testator.

Devise or bequest to children or grandchildren, though they are not personally
named, gives a vested interest when the contrary intention is not shown by
the will.

Grandchildren living at testator's death took in vested interest by heads and not
by class where on termination of testamentary trust the will directs that the
remainder "be equally divided among my grandchildren share and share alike."

On report.    The issues of two bills in equity find decision in this
single opinion.    The trustee under the will of Joseph C. Stevens
brought the first bill to be instructed as to whom he should pay
certain income accrued and undistributed from the testamentary
trust.    On the determination of the trust, while the bill by the trustee
was still pending, but before its deciding could be, because one of the
defendants had died and his administrator was not yet a party, one
of the testator's surviving grandchildren, of conceded concern in
what the will styles "remainder," filed her bill against all other
persons of possible interest, praying construction of the will in relation
to the corpus.    When both cases were in order, they were submitted
on the bill, answer and stated facts in each, and then reserved for the
Law Court.    The propositions involved are stated in the opinion.

First Bill:

*H. M. Cook*, for complainant.

*Henry W. Mayo*, for respondents, Thomas C. Stevens and Margaret Stevens Clark, and

*Matthew Laughlin, pro se*, as guardian ad litem for three minors, Chauncey S., Stanton W., and Gretchen Todd, and for Stanton W. Todd, Admr., and Stanton W. Todd, and Dorothy M. Todd.

Second bill:

*Henry W. Mayo*, for complainant.

*Howard M. Cook*, pro se.

*Frederick B. Dodd*, for Grace B. Stevens.

*Mathew Laughlin* for same parties as in first bill.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, BARNES, JJ.

DUNN, J. The will of Joseph C. Stevens, following the usual introductory clause, nominates an executor and trustee, makes minor legacies, and proceeds, in abbreviated form where of less intimate connection with meaning in these two suits, as follows:

"After the few bequests all the remainder of my estate,   .   .   .   . I give   .   .   .   ·.   in trust," while any son or˙any annuitant of mine lives, for the annuities hereby created and for the bequest conditionally given, and to divide the income then remaining "among my living sons and the families of˙such of my sons as may have deceased, a share to each son, and an equal share to each family of a deceased son who may leave one or more children," until the appointed time arrives at which the trust is to terminate. ,

What comes next is:

"I give to the widow of any deceased son without one. or more children by any one of my sons.two thousand dollars.   .   .   .   ." .

Then are these. words:

"And after the termination of this trust I direct that all the remainder of my estate be equally divided among my grandchildren share and share alike.  ..  .  ."

There is inhibition against the transfer of claim or rights, not restricted to beneficiaries of the trust, but applied generally to beneficiaries throughout its period, on penalty of forfeiting.

It was a spendthrift trust (*Robert* v. *Stevens*, 84 Maine, 325), limited to the death of the last son, which occurred in this year, 1926. The trustee was authorized to lease the real estate in all or part.

"Unproductive estate," the will impliedly thus comprehending but realty, could have been sold under court license, and personal property might have been sold, and the proceeds from either source reinvested.

A will speaks from the death of the testator, but for the purpose of determining a testator's intention from the language used in a will, it should be construed as an entirety, and every part be reconciled and given effect if possible, as of the date of its execution, circumstance illumined by the surroundings that were then extrinsic.

In 1881, when this will was made, its maker was in widowerhood. His eldest son had died leaving wife and child surviving. There were only three living sons, of whom two, Frederick and Thomas, respectively of name, were married; the record is indefinite if ever the third had wife; certain is it that he left no descendant. Mae was the single child of Frederick. Thomas had two children, Grace and Charles, and no more.

And so the testator was relatived, less than two years afterward, when he died.

Of estate, the personalty amounted to about $8,000; the realty was certain Bangor stores. The net annual income from both real and personal was approximately $3,000; since then increased rentals have quadrupled that.

The annuities and the conditional bequest are aside. No son of the testator is living now, so the trust is ended.

Frederick's daughter Mae, who on marriage became Todd, lived longer than her father. She was outlived by her husband and four children. Grace Stevens, now surnamed Clark, the daughter of the last of the sons, still survives. Charles, her brother, died in 1888, aged twelve years. Under the statute then in force, propinquity in kin and heirship found only the boy's father, and when that father died without leaving a will, the law cast the inheritance exclusively from him to his daughter, Grace Stevens Clark.

Two cases are presented for consideration. The first concerns accrued and undistributed income; the other the corpus of the estate.

In the administration of the trust, the assumption seems to have been, when a son died not survived by offspring, that the income as to him should cease, on the ground that the will constituted one entire trust scheme, subject to change by future death, among living sons and the child-embracing families of dead ones. But when in

1925 Mrs. Todd died intestate, whether and who of her husband and children were entitled to share in the income from the trust fund became of question.

Will construction cases fill a good-sized volume, but no chart more definitely marks a channel that can be depended upon to follow, than testamentary words derive their particular significance from the context. One will may or not be so expressed as to furnish a guide toward the same conclusion in another. Different testators may speak in much the same verbiage from different viewpoints to different purposes; it being as true today as when the epigram was penned, "that no will has a brother."

The goal of interpretation is not the intention simply, but the legal consequences of the indicated intention of the individual testator. If it be uncertain, his expressed or implied meaning must be gathered as a fact, gathered from what he said in the whole instrument, read in the light which the position that was attending continues to shed. These principles of law, generally adopted by all courts, lead to the point which opposite arguments present by logic and analogy.

"Family," to speak in the singular of the word which the will pluralizes, was applied in the initial using even broader than synonymously with kindred or relations by consanguinity. Obviously, the testator was desirous of doing impartially among living sons and the families of dead sons, where the dead left, surviving, one child or more; each son and family to take in the same proportion. Transposal of the order of clauses disencumbers testamental design from the cloud of words with which it is covered. To every woman widowed by the death of any son of his, the testator gave absolutely and in the same quantity, not from the income let it be noted, but by charge on the body of the trust. The income, apart from that apportioned in other respects, was for the living sons and the family of a son dead leaving child or children. Where there is childless widow, there shall be bounty, definitely said the testator in his way of defining. The text plainly implies the inclusion of every widowed mother. For every widow having no child, bequest from the corpus. The income, with no accumulating feature and limited to lives in being, for each living son and the family of any son dead; family here embracing widow and at least one child, in differentiation of a widowed mother from a widow merely. Of course, were there no widow, then child or

children would be family, in the survivorship and stead of a dead son. For them all, as the case might be, the will contained provision.

Of Frederick, as has been seen, his wife and the child were the survivors. They two made up the family, which the widow's death narrowed. Before or after that widow's death, in these proceedings it is inconsequential which, but at some time Frederick's daughter married. She bore children. The daughter-mother died, leaving husband and children. That husband is not a member of his deceased wife's father's family.

By implication, when the term was used first, the sense of family in relationship to a dead son's family was a son's children, plus his widow by right of representation, for the testator did not prefer a childless widow before a widowed mother; his solicitude and bounty extended to both. When the widow of the son Frederick had died, her surviving child was yet of that son's family, though the widower was not, because of absence in the varying shade of thought of purpose to include relations by affinity. Death takes Frederick's child. What of the income? Shall it augment the shares of living sons? No; the portion for them stands allotted. Shall the income be allowed to accumulate? No; for the will says to pay. Pay to whom? And the will answers, Frederick's family. Family is a flexible term; the whole human race constitutes the human family. The testator, however, here speaks as of descent. Those who were the family, widow and child and then child alone, are gone, but the trust lives and moves to another generation; that is to say, to Mrs. Mae Todd's children, for Frederick's family.

In the proper import of the term, to come now to the other inquiry, no remainder exists. Property is remaining, and of this the will makes disposition, but there is no remainder properly so termed. There are, however, vested interests in the nature of remainders in that which is remaining, chiefly the original real estate, and where these were vested is what the present asking is.

The trustee took the estate which the purposes of the trust required. *Deering* v. *Adams*, 37 Maine, 264; *Palmer* v. *Est. of Palmer*, 106 Maine, 25; 2 Jarman on Wills, 1156. The exigencies, though mainly the trust was to preserve income, necessitated the title to the personal property and the fee simple of the real, in trust, for the paying of bequests to childless widows, not from the income, as has been observed, but from the corpus of the trust.

When the mortal lives to which the objects of the trust were limited had ended, on which event the duties of the trust became passive and the trust itself dry, the property remaining passed to the testator's grandchildren.

But to whom of them and when?

It is contended that if the interests were not vested in the grandchildren before the ending of the trust, the children of a grandchild who is then dead will take nothing, and as there is no showing that the testator so intended, therefore the vesting was before that time.

Since the will as a whole is the base on which its utility must stand or fall, the scanning again of that document with thoroughness may ease the way to understanding its true intent.

There are in the will no conventional words of gift to the grandchildren. The disposal is by direction to divide what remains among the grandchildren. Quite as important, other than that direction, there is no gift to anyone, and the testator never contemplated intestacy.

Said the testator in effect, when there is not longer need of my estate for revenue, which will be after my sons have been incomed till the last is dead, the residue of my estate is to be "equally divided among my grandchildren share and share alike."

Adverbs of time, as "after," in a connection such as this, are construed to relate to the time of the right of use, possession, and enjoyment, and not to that of vesting interest, unless from the will it appears that the testator meant variantly. A turning point, or controlling event in the disposition of property by a will, generally, where there is not express or implied intention to the contrary, will be construed to relate to the time of the death of the testator.

When this testator wrote, and when he died, there were only four grandchildren. None came afterward, but two died before the trust terminated. Their disinheritance "would not be presumed to be intended  .  .  .  . unless such intention is clearly manifested." *Teele* v. *Hathaway*, 129 Mass., 164, 166. "In ninety-nine cases out of a hundred the intention of the testator is that his bounty should be transmitted to the children or family of the beneficiary, otherwise indeed full effect is not given to it." *Chess's Appeal,* 87 Pa. St., 362, 365. A devise or bequest to children, though they are not personally named, gives a vested interest where the contrary intention is not shown by the will. *Gibbens* v. *Gibbens*, 140 Mass., 102. The rule

above stated applies, in general, to one's own grandchildren as beneficiaries. The collective name distinguishes them beyond the possibility of mistaking their identity. The calling of their names is not one by one, but all at once. When legatees are designated by name and the character of the estate is indicated by the words, "in equal parts share and share alike," there is a strong presumption of testamentary intent that the legatees shall take as individuals. *Strout* v. *Chesley*, 125 Maine, 171. And, in parity, "where the limitations are to the direct descendants of the testator, it is a circumstance that warrants the inference that vested, rather than contingent remainders were intended to be created." *Carver* v. *Wright*, 119 Maine, 185. Look into *Belding* v. *Coward*, 125 Maine, 305; 133 Atl., 689, also.

The time when the property, after the provisions for the first generation and their families and widows were fulfilled, should pass in title and possession to the second generation, was not inseparably connected with the testator's appointment of the time of vesting, but in probability was with him a matter of less moment. Both interests, the present and the future, vested, the one in right and title, the other in right, at the same instant of time. First, the trust: When this to an end should come, which is but a change in expression, without a change in meaning, from after the termination of the trust, and "dividing" could not have been before the trust had run, the defeasible estate which the trustee had had being then determined, the estate which was left was for the grandchildren. Grandchildren then living? The will replies, "My grandchildren." And they were those the testator knew and seemingly expected would outlive the trust. But, whether outliving the trust or not, the grandchildren whom he knew.

By using the word "grandchildren," this testator did not classify, but distinctioned the sons' children living at the epoch of his own death. In his speech he comprises them similarly to his sons, saying: "After the trust is over and gone, when none of my children longer lives, then give the property to these grandchildren of mine."

Conclusion is that the defeasible estate which the original trustee took in trust, and which passed to the trustee in succession, determined at the ending of the trust, and passed to the grandchildren of the testator who were alive when he died, to which grandchildren an immediate fixed and descendible and inheritable right to have what was remaining, and enjoy it in the broadest estate known to the law,

by heads and not as a class, was made by the testator.   To them, or
the legal representatives of those deceased, the personal estate should
· be delivered; the will passes the real estate to the living and to them
having the estates of the dead.

While a system of interpreting one ambiguous will cannot be built
up by means of the scaffolding from another, but must be constructed
and erected on the plan of the will wherein uncertainty of meaning is,
still on the former framework there may be guiding marks.   See
*Deering* v. *Adams,* supra; *Pearce* v. *Savage,* 45 Maine, 90;   *Shattuck*
v. *Stedman,* 2 Pick., 468; *Cummings* v. *Cummings,* 146 Mass., 501;
*Minot* v. *Purrington,* 190 Mass., 336.

Decrees as this opinion indicates, the amount to the trustee for his
fees and expenses, for allowance in his administration account, to be
settled below.

*So ordered.*