ANDERSON A. ABBOTT ET AL. *vs.* EDWARD F. DANFORTH ET AL.

Androscoggin.    Opinion, June 11, 1937.

*Edward R. Parent,*
*Harold L. Redding,* for plaintiffs.
*Butler & Butler,*
*Edward F. Danforth,*
*Gower & Eames,* for defendants.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

DUNN, C. J., dissenting in part.

MANSER, J. On report. Bill in equity for construction of the will of Joseph Thompson, which except for the nomination of an executor, and not including formal parts, reads as follows:

"I give, bequeath and devise to my mother, Lucy J. Thompson and my brother, Charles Thompson, or the survivor of them, the use and income of all my property, real, personal and mixed; and if after they use their own property, the income of my property should not be sufficient for their comfortable support then, I give, bequeath and devise to them or the survivor of them, such a part, or the whole, of the principal thereof as may be necessary for their comfortable care and support and funeral expenses.

"After the decease of both my mother, Lucy J. Thompson and my brother, Charles Thompson, the balance of my property, if any, I hereby give, bequeath and devise to my legal heirs according to their legal rights."

This will was dated August 2, 1897. The testator died April 18, 1917. Lucy J. Thompson, the mother, died October 2, 1898, a little more than a year after the execution of the will, but the will remained unchanged during the eighteen years intervening before the death of the testator.

In the agreed statement of facts submitted by the parties, it is stipulated that the financial condition of Charles Thompson was such that it was unnecessary to expend the income or principal or any part thereof in his lifetime, or any part of the principal or income for his funeral expenses.

At the time of the death of Joseph Thompson, his brother, Charles Thompson, was his only heir at law.

If he is excluded as remainderman, the legal heirs of Joseph Thompson at the time of his death, aside from Charles, were Tilson D. Salley, Ashmun T. Salley, Helen Salley Merrill, Delbert B. Ho-

bart, Marshall Abbott, Marcia Ellis Hodges and Ellen Abbott Ludwick.

All of these, except Delbert B. Hobart died between the date of the death of Joseph Thompson and the date of the death of Charles Thompson. Their successors in interest, either by descent or devise are the present plaintiffs. They claim the estate should descend to them and said Hobart *per stirpes*.

Delbert B. Hobart claims the entire estate as the next of kin and only heir at law of Joseph, who was living at the death of Charles.

Charles Thompson died testate and left to Martha M. Berry, one of the defendants, all his property, real and personal, "for her to have and to hold forever."

Martha M. Berry was not related to Joseph or Charles Thompson. She claims the entire estate of Joseph Thompson as forming a part of the estate of Charles, of which she was sole beneficiary.

Thus are presented the conflicting claims which are to be determined by an interpretation of the will of Joseph Thompson.

The plaintiffs further contend that as it never became necessary for Charles to use any of the income of the estate of Joseph, he never became entitled thereto, and it accumulated as a part of the estate of Joseph.

Stated with greater exactness and in legal terminology, the plaintiffs claim:

(1) That Charles took a life estate in the property of Joseph, modified and limited, however, to use of both income and principal only in event his own property was insufficient for his comfortable support.

(2) That it was the intention of the testator to exclude the life tenant as a remainderman.

(3) That upon the death of Joseph the remainder of his property, subject to the life estate, vested in the heirs of Joseph, exclusive of Charles, and as of the date of the testator's death.

The defendant, Hobart, agrees with the first two contentions, but asserts that the remainder was contingent and did not vest until the death of Charles, the life tenant, at which time he was the sole next of kin.

The defendant, Martha M. Berry, contends:

(1) That the gift of income to Charles was absolute.

(2) That the remainder, although subject to a life estate in him, vested in Charles as the sole heir at law of his brother, Joseph, upon the death of the latter, and being devisable, passed to her as sole beneficiary under the will of Charles.

(1) Was there an outright or a qualified gift of income?

There is no actual ambiguity in the provisions of the will in this respect. The right to the income is definite and certain. It is granted without restriction. Following the absolute bequest of income is found the provision permitting under certain prescribed conditions the use of a portion or the whole of the principal. As precedent to this permitted right, the beneficiary must first have exhausted his own property as well as the income from his brother's estate.

The construction contended for, that the will made no devise or bequest of a life estate whatsoever unless the beneficiary should have first consumed his own estate, finds no rational basis of interpretative support. The income became the property of the legatee. The principal was to remain intact during the lifetime of the beneficiary except in event of a definitely stated contingency. Such appears to be the plain intent of the testator.

(2) Was the remainder created by the will vested or contingent?

Our Court, in consonance with the great trend of authority, has enunciated the principle well expressed in *Blaine* v. *Dow*, 111 Me., 480, 89 A., 1126, 1129.

"So strong is the presumption that testators intend the vesting of estates that it is an elementary rule of construction that estates legal or equitable, given by will, should always be regarded as vesting unless the testator has by very clear words manifested an intention that they should be contingent upon a future event. And so clear must be his expression that it is held that in cases of doubt or ambiguity as to the time when it was intended the estate should vest, the remainder will be regarded as vested rather than contingent."

This rule is reiterated in *Carver* v. *Wright*, 119 Me., 185, 109 A., 896, and *Belding* v. *Coward*, 125 Me., 305, 133 A., 689, and emphasis may well be enforced by repetition.

By the will under consideration upon the death of the testator, there was granted to his legal heirs the present right to future possession. No trustees are appointed. The life tenant is entitled to the management, possession and control of the estate. The only uncertainty is as to the quantum of the estate remaining upon the termination of the life estate.

"A remainder which is otherwise vested is not rendered contingent by the conferring of a power of sale upon either the life tenant or the executor. If the power is so exercised as to dispose of all the estate, nothing may be left to the remainderman, but the remainder is not made contingent because it is uncertain whether the power will be exercised as to part or all of the estate. The remainder may vest subject to the power." 23 R. C. L., Remainders, 511. See also *Merrill* v. *Wooster*, 99 Me., 460, 59 A., 596.

The corpus of the estate might be diminished but the right to the balance remained unaffected.

Adapting the expression of Whitehouse, C. J., in *Danforth* v. *Reed*, 109 Me., 93, 82 A., 699, to the present case, the well-recognized and familiar principles of law respecting life estates with a qualified or unqualified power of disposal, and the doctrine of vested and contingent remainders lead irresistibly to the conclusion that the estate vested in the remaindermen at the death of the testator, but liable to be devested by execution of the power of disposal during the lifetime of the beneficiary, the actual possession and enjoyment of it being postponed in any event until the death of the life tenant.

(3) The remaining question is not without difficulty.

Confining consideration solely to the one provision, "After the decease of both my mother, Lucy J. Thompson, and my brother, Charles Thompson, the balance of my property, if any, I hereby give, bequeath and devise to my legal heirs according to their legal

rights" we are confronted with a situation where, in fact, Charles Thompson was the only legal heir of the testator at his death.

Argument in behalf of the devisee of Charles, presents bluntly that the testator by the use of the words "my legal heirs" could not have intended to include his cousins who were not his heirs and exclude his brother who was his only heir; that the use of the word "heirs" is presumed to be in its legal sense unless the terms of the will show a contrary intention; that there is no legal inconsistency in a remainder to take effect at his death, and the fact that the first taker is also the sole heir does not alter the rule.

In support of these contentions are cited *Carver* v. *Wright*, 119 Me., 185, 109 A., 896; *Himmel* v. *Himmel*, 294 Ill., 557, 128 N. E., 641; *Re Estate John Stoler*, 293 Pa., 433, 143 A., 121; *Tatham's Estate*, 250 Pa., 269, 95 A., 520; *Merrill* v. *Wooster*, 99 Me., 460, 59 A., 596; *Abbott* v. *Bradstreet*, 3 Allen, 587 (85 Mass.); *Torrey* v. *Peabody*, 97 Me., 104, 53 A., 988; *Houghton* v. *Hughes*, 108 Me., 233, 79 A., 909.

Such cases interpreting individual wills have been given careful consideration, but it must be borne in mind that eminent jurists and authors have long recognized that judicial decisions in the case of wills lack the authority properly accorded to precedents in the application of legal principles generally. The reason given is the intention of the testator under the particular instrument is what is sought, and all rules of construction are designed to ascertain and give effect to that intention. It must prevail, provided it be consistent with rules of law, and this rule is one to which all other rules must bend.

In our own state in *Bradbury* v. *Jackson*, 97 Me., 449, 54 A., 1068, 1070; Powers, J., observes:

"It would be unprofitable to here undertake to distinguish or analyze the cases cited. Precedents and rules of testamentary instruction may afford valuable aid when the testator's intention is in doubt, but when that intention is clearly expressed in the will, and violates no rule of public policy, it must be given effect. It overrides precedents and technical rules of construction. This 'pole star', as it is sometimes termed, of testamentary construction 'leads into various courses, since every

will must be steered by its own luminary. Yet uniform justice is better than strict consistency.' Schouler's Exors. & Admrs. Par. 474. . . . No two wills are ever precisely alike. No two testators are situated precisely the same, and it is both unsafe and unjust to interpret the will of one man by the dubious light afforded by the will of another.

"*In re Morgan* (1893) L. R. 3, Ch. 222, Lindley, C. J. says, 'I should have thought that upon the will the matter was reasonably plain, but we are pressed with authorities. Now, I do not see why, if we can tell what a man intends, and can give effect to his intention as expressed, we should be driven out of it by other cases, or decisions in other cases. Of course there are principles of law which are to be applied to all wills, but if you once get at a man's intention, and there is no law to prevent you giving it effect, effect ought to be given to it.'"

Pertinent also are the comments of Miller, J., in *Clarke* v. *Boorman's Executors*, 18 Wall, 493 at 502:

"Very few classes of questions are more frequent or more perplexing in the courts than the construction of wills. If rules of construction laid down by the courts of the highest character, or the authority of adjudged cases, could meet and solve these difficulties, there would remain no cause of complaint on that subject, for such is the number and variety of these opinions that every form of expression would seem to be met. . . . Unfortunately, however, these authorities are often conflicting, or arise out of forms of expression so near alike, yet varying in such minute shades of meaning, and are decided on facts or circumstances differing in points, the pertinency of which are so difficult in their application to other cases, that the mind is bewildered and in danger of being misled."

So we find the cases are not in accord in result where the person to whom the previous life interest is bequeathed by the will is the sole member of the class described as heirs, to whom the remainder is given. These differentiations, dependent upon the cardinal rule of intention, are illustrated in *Thomas* v. *Castle*, 76 Conn., 447, 56 A., 854; *Kenyon, Pet'r.* 17 R. I., 149, 20 A., 294; *Heard* v. *Read*, 169

Mass., 216, 47 N. E., 778; *Boston Safe Deposit Co.* v. *Blanchard*, 196 Mass., 35, 81 N. E., 654.

Nowhere is it declared that the mere fact the life tenant was the sole heir was sufficient to bar him as remainderman, nor does any rule of law or canon of construction arbitrarily fix his status as such remainderman.

"In giving judicial construction to wills, the Court seeks only to discover and give effect to the testator's intention as disclosed by the language of the will itself in the light of any avowed or manifest object of the testator." *Mace* v. *Mace*, 95 Me., 284, 49 A., 1038.

"If the language of the will is of doubtful meaning, it may be interpreted in the light of conditions existing at the time the will was made, and which may be supposed to have been in the mind of the testator." *Palmer* v. *Estate of Palmer*, 106 Me., 25, 75 A., 130, 131.

With these aids to interpretation in mind, we find that Joseph Thompson, the testator, and Charles Thompson were brothers; that both were unmarried; that each had approximately the same amount of assets, the income of which was sufficient for his needs; that for the last eighteen years of the life of the testator, Charles was his only heir presumptive; that there is no intimation that Charles was extravagant in living or a spendthrift.

The will, made twenty years before the testator's decease, his mother having died within two years of its execution, showed solicitude for the welfare of the brother, providing for his comfort and support while he lived to the full extent of his property, if necessary. Yet he hedged this provision with the requirement that the entire property of Charles should be used, inclusive of the income of his own estate, before recourse should be had to any part of the principal. This precluded any right to make a gift of any portion during his lifetime. The will contains no terms granting the life tenant the power of appointment, nor the right to devise or bequeath.

Having made these specific and limited provisions regarding the use of the property during life, the will then provides that at the death of Charles, "the balance of my property, if any, I hereby

give, bequeath and devise to my legal heirs according to their legal rights."

In the light of the language of the entire will, and of the surrounding circumstances of the parties, did the testator intend to give to his brother an estate in fee, subject only to his own life estate, and which fee or remainder, as a vested interest was descendible, devisable and alienable, as pointed out in *Belding* v. *Coward,* 125 Me., 305, 133 A., 689. In other words, does the will affirm or negative by language or implication the right of the brother to devise the testator's entire estate to a stranger? Did he intend to enlarge and extend his beneficence, to enable the life tenant, with limited right of use for his own comfort, to accomplish such result, or did he intend his estate for his own blood kin upon his brother's death?

Sometimes an item of apparently small consequence is of significance. He explicitly provided that, if necessary, out of the principal of his estate, his brother's funeral expenses should be paid.

Is this conditional bequest of amount sufficient to bury his brother out of his own estate, consistent with the purpose of vesting the entire estate in his brother?

If intention to vest the remainder in Charles existed, it was not, as in many cases, because of the happening of some contingency, or the failure of a limitation to others. He knew Charles was his only heir. If Charles predeceased him the will was then declaratory of the descent statute. If he outlived him, then without provision for any alternative limitation or contingency, it is urged that the Court should say that the testator solely and deliberately provided with meticulous care for the use by his brother of his property during his life only to give it to him upon his death, with the concomitant right to will it to another.

Similar considerations are given weight in *Close* v. *Benham,* 97 Conn., 102, 115 A., 626, where life use of part of the estate was given to Lizzie Benham, a daughter, and if she died without issue, then to the next of kin of the testator. The court said:

"The language of the will discloses a plain purpose on the part of the testator, as we have observed before, to keep his estate in his own blood. If Lizzie be held to be one of the next of kin, she could at any time have transmitted it by will or de-

scent; but she could not herself enjoy it. And her power of transmission might be exercised in favor of strangers to the exclusion of the blood of the testator. The testator, as we hold, intended by the gift over to his next of kin, to exclude Lizzie from that class."

As well stated in 28 R. C. L., Wills, Par. 177:

"The intention of the testator need not be declared in express terms in the will, but it is sufficient if the intention can be clearly inferred from particular provisions of the will, and from its general scope and import. The courts will seize upon the slightest indications of that intention which can be found in the will to determine the real objects and subjects of the testator's bounty. The inference as to intent need not be irresistible or such as to exclude all doubts possible to be raised but must, nevertheless, be such as to leave no hesitation in the mind of the court and must not rest on mere conjecture."

It is therefore the opinion of the Court that under the will of Joseph Thompson

(1) The income from his estate, accruing during the life of his brother Charles, became the absolute property of the latter.

(2) That a life estate, with limited power of disposal, was given to Charles Thompson, and he not having exercised such power, the entire corpus of the estate was devised and bequeathed to the testator's heirs.

(3) That under the will, a vested remainder was created, subject to the life estate, in the heirs of Joseph Thompson, as of the time of his death, and excluding the life tenant, Charles Thompson.

*Decree in accordance with this opinion.*

DUNN, C. J. (dissenting in part).

After testator's own death, his mother having predeceased him, the frame of his last will, which the Probate Court took proof and allowed, gave his property to his brother, Charles, for life, with re-

stricted power of disposal. Testator does not provide a remainder, but merely disposes of one, should it exist, the devise being "to my legal heirs according to their legal rights," in fee simple.

There is a remainder. The question for decision is whether testator's intention, as expressed in his will, defines a limitation which, as it affects ascertainment of his "legal heirs," excludes his brother, before of mention, who was indeed his only heir at law.

No words in the devise over enlarge, restrain or modify the technical words "legal heirs." These words then are presumed to have been used in their judicially defined sense. *Jacobs* v. *Prescott,* 102 Me., 63, 65 A., 761; *Houghton* v. *Hughes,* 108 Me., 233, 79 A., 909; *Morse* v. *Ballou,* 112 Me., 124, 127, 90 A., 1091; *Hay* v. *Dole,* 119 Me., 421, 423, 111 A., 713; *Hiller* v. *Loring,* 126 Me., 78, 136 A., 350.

A testator's heirs — his will not plainly manifesting his different intent — are, by the general rules of construction, to be determined as of the day of his death. *Brown* v. *Spring,* 241 Mass., 565, 135 N. E., 701; *McCarthy* v. *Walsh,* 123 Me., 157, 161, 122 A., 406.

In case of a devise of a remainder, after a life estate, to the heirs of the testator, the life tenant may take, even though such remainder may never come into the possession of the remainderman. *Abbott* v. *Bradstreet,* 3 Allen, 587; *Minot* v. *Tappen,* 122 Mass., 535; *Chesman* v. *Cummings,* 142 Mass., 65, 70, 7 N. E., 13; *Rotch* v. *Rotch,* 173 Mass., 125, 130, 53 N. E., 268; *Cushman* v. *Arnold,* 185 Mass., 165, 169, 70 N. E., 43; *Gardner* v. *Skinner,* 195 Mass., 164, 166, 80 N. E., 825; *Brown* v. *Spring,* supra; *Forbes* v. *Snow,* 245 Mass., 85, 91, 140 N. E., 418; *Ball* v. *Hopkins,* 254 Mass., 347, 150 N. E., 434; *Carver* v. *Wright,* 119 Me., 185, 189, 109 A., 896. The life tenant would, in such an instance, have, besides his estate for life, a vested equitable remainder. In this, there would, in law, be nothing inconsistent or repugnant. *Cushman* v. *Arnold,* supra.

There was, to recur to the will here presented, a present gift. The gift over may well be held to have been to the brother, who, when testator died, became his sole heir, rather than to testator's cousins, who, had his brother not survived him, would have been his heirs. *Merrill* v. *Wooster,* 99 Me., 460, 59 A., 596; *Danforth* v. *Reed,* 109 Me., 93, 96, 97, 82 A., 699.