**MAINE NATIONAL BANK et al.**

**v.**

*Florence C. PETRLIK et al.*

Supreme Judicial Court of Maine.

Nov. 12, 1971.

Drummond, Wescott & Woodsum, by
Theodore H. Kurtz, Portland, for Maine
Nat. Bank.

Preti & Flaherty, by Arthur A. Peabody, Portland, for Robert F. Preti.

Levenson & Levenson, by Alan J. Levenson, Portland, for Stewart G., Mary H. and Glenda Taylor.

Linnell, Perkins, Thompson, Hinckley & Thaxter, by Royden A. Keddy, Portland, for Florence C. Petrlik and Jennie M. Taylor.

Wilson, Steinfeld, Murrell & Lane, by Henry Steinfeld, Portland, for guardian ad litem.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

ARCHIBALD, Justice.

This action was commenced by the plaintiffs as Trustees under the will of Stewart M. Taylor requesting the Court to "instruct Plaintiffs whether to hold said trust fund for the benefit of Stewart G. Taylor in trust for a further period of ten years from March 11, 1970, or distribute one-half thereof to Stewart G. Taylor, the remaining one-half to remain subject to said trust for a further period of ten years from March 11, 1970." The defendants join in this request. The matter was reported to this Court on an agreed statement of facts "for such final decision as the rights of the parties may require."

The living defendants are: Florence C. Petrlik and Stewart G. Taylor, daughter and son of the testator; Mary H. Taylor, wife of Stewart G. Taylor; Jennie M. Taylor, the testator's widow, and Glenda Taylor, daughter of Stewart G. Taylor by a former marriage. Each of these is represented by counsel of record. The complaint names other defendants in this language: "[A]nd all unborn issue of Stewart G. Taylor; and all other persons unascertained and not in being or unknown who may claim any right, title or interest in the trust estate held by Plaintiffs."

On motion of the Plaintiff Trustees, joined in by all adult and living defendants, a *guardian ad litem,* Henry Steinfeld, Esquire, a member of the Maine Bar, was appointed to represent "all persons unknown, unascertained, hereinafter born or all persons who may be minors at the time of this proceeding and who may have an interest in the subject matter of this litigation and who are not otherwise represented." We consider that all parties in interest are properly before the Court.

Following this appointment, counsel for all defendants and the guardian ad litem agreed to certain facts and to report the issue to this Court. The first issue to be decided is whether the guardian ad litem had the authority to adopt this procedure.

■ The living and adult defendants have an obvious right to select the method here adopted as a vehicle to resolve the legal issues raised by the pleading and the agreed statement.

■ The court has the power to appoint a guardian ad litem to defend the interests of any minor or other incapacitated person in pending actions. 18 M.R.S.A. § 3651. *See, also* M.R.C.P., Rule 17(b).

■ The duty of the guardian ad litem proscribes any admission or waiver that goes to sustain the claim of an adverse party. Kennard v. Wiggins, (1942) 349 Mo. 283, 160 S.W.2d 706. *See also* Schaefer v. Daniels, (1944) 135 N.J.Eq. 179, 37 A.2d 763. We adopt the language found in Pettengill v. Gilman, (1967) 126 Vt. 387, 232 A.2d 773:

"The law's careful concern for the representation of an infant in court is equally protective of the manner in which his rights are to be determined.

It has been generally held that the authority of counsel and guardian appointed to represent a minor in litigation does not include the power to submit his case on conceded facts. This general rule applies unless it appears the facts agreed upon are to the advantage of the infant, or at least do not jeopardize the infant's rights. Except where the court is satisfied these safeguards prevail, facts which might be the subject of concession

on the part of adults should be proved when asserted against infants * * *."

The facts here stipulated are obvious and indisputable. They are limited to the identity of the parties, their ages, a listing of family members, an agreement on the date of the testator's death (March 11, 1960) and a description of past procedures in the Probate Court. The pleadings admit the contents of the will, which had been properly probated. The proof of any of the stipulated facts in the atmosphere of an actual trial would have been routine and unobjectionable. The agreed statement was nothing more than the acceptance, without formal proof, of the obvious. This could in no way jeopardize any rights of the incapacitated parties. In fact, as we see it, these facts are necessary to have in the record so that the rights of all parties under the will might be resolved.

■ M.R.C.P., Rule 72(b) [1] provides a procedural method for the final resolution of legal issues expeditiously and with minimum expense. This method is particularly appropriate in the instant case and is advantageous for all parties. Its use eliminates a nisi prius hearing and leads directly to a final judgment. While a guardian ad litem cannot bargain away the rights of those he represents, this does not prevent him from assenting to such procedural arrangements as will facilitate the determination of the case.

In Cloud v. Market St. Ry. Co., (1946) 74 Cal.App.2d 92, 168 P.2d 191, the guardian ad litem had waived jury trial in a tort action, and the court, noting that the precise question had arisen in very few cases, stated:

"The general rule is thus stated in Kingsbury v. Buckner, 134 U.S. 650, 680, 10 S.Ct. 638, 648, 33 L.Ed. 1047:

'It is undoubtedly the rule in Illinois, as elsewhere, that a next friend or guardian ad litem cannot, by admissions or stipulations, surrender the rights of the infant. The court, whose duty it is to protect the interests of the infant, should see to it that they are not bargained away by those assuming, or appointed, to represent him. But this rule does not prevent a guardian ad litem or prochein ami from assenting to such arrangements as will facilitate the determination of the case in which the rights of the infant are involved.' "

■ We hold that the guardian ad litem acted within his authority in agreeing to the stipulation and to the report.

The testator executed his will on December 27, 1958, which, after several specific bequests, established a trust for the primary benefit of the widow and his two children, should they survive him.

The language of the trust follows:

"23. This trust fund shall terminate ten (10) years after my death as to my said wife and daughter, and my Trustee shall, if my said wife is alive and unmarried, distribute from the corpus one-third ($\frac{1}{3}$) to my said wife and one-third ($\frac{1}{3}$) to my said daughter, or her issue, per stirpes; my said son's interest in the balance, if living, to continue in trust for ten (10) additional years with right to all net income, and, if not living, or upon subsequent death, his share to be distributed, one-half ($\frac{1}{2}$) to my said daughter, or issue, and one-half ($\frac{1}{2}$) to my said son's wife, Mary H. Taylor. If my wife is remarried or deceased, then one-half ($\frac{1}{2}$) of said corpus to my said daughter, or her issue, per stirpes; one-fourth ($\frac{1}{4}$) thereof to be distributed to my said son or his issue and the other one-fourth ($\frac{1}{4}$) to be held by this trust for the continuing benefit of my said son under the terms and conditions of this trust for a further period of ten (10) years or until

1. Rule 72(b): "Report on Agreed Facts. The court may, upon request of all parties appearing, report any action to the Law Court for determination where there is agreement as to all material facts, if it is of the opinion that any question of law is involved of sufficient importance or doubt to justify the same."

the death of my said son, whereupon, in the event of such termination within ten (10) years by death, one-half (½) of the same shall be paid over to my son's wife, Mary H. Taylor and the other one-half (½) to my said daughter, FLORENCE C. PETRLIK, or her issue. In the event of termination by reason of the end of the duration of this trust instead of the death of my said son, then the whole to be distributed to my said son, free from trust."

Two basic plans emerge from this language:

*Plan 1.* At the end of ten years, assuming the widow be then alive and unremarried, the trust for the son's benefit was to continue for an additional period of ten years.

*Plan 2.* At the end of the first ten years if the widow had remarried, or had died, the trust was to be equally divided between the son and daughter, one-half of the son's share to be delivered free of trust and the remainder to be held in trust for an additional ten years.

Following the testator's death and the probate of the will, the widow waived its provisions and took her statutory share.[2] Her right to participate further in the trust estate was terminated and the corpus was depleted by the removal therefrom of an amount equal to her intestate share of the estate.

■ The first ten year period having elapsed, the Trustees, by this complaint, allege doubt over the construction of the will and the mode of executing the trust for the ensuing ten year period, thus giving the court jurisdiction to decide the issues. 14 M.R.S.A. § 5956(3) and § 6051(10).

The specific question is this: Do the Trustees hold the son's entire share of the corpus in trust for the second ten year period (Plan 1), or do they pay the son one-fourth of the corpus and retain the remaining one-fourth in trust for this term (Plan 2)?

No testamentary provision in anticipation of the waiver of the will by the widow was made and we must determine what effect, if any, this might have on the issue before us.

■ When a widow elects to waive the provisions of her husband's will, she cannot participate further in it. United States Trust Company of New York v. Douglass, (1948) 143 Me. 150, 155, 56 A.2d 633, 636. This act is equivalent to her death for the purpose of administering the estate. Eastern Trust and Banking Company v. Edmunds, (1935) 133 Me. 450, 179 A. 716.

■ In construing this testamentary trust we apply well established rules of construction. The cardinal rule is to give effect to the intention of the testator gathered from the language of the will, bearing in mind that such intention must be related to the time the will was executed. If such language is ambiguous or doubtful, the conditions existing when the will was made may be considered if they were known to the testator and may be supposed to have been in the mind of the testator at the time. First Portland National Bank v. Kaler-Vaill, (1959) 155 Me. 50, 151 A.2d 708.

■ Precedents are uncertain guides in the interpretation of a will.

"No two wills are ever precisely alike. No two testators are situated precisely

2. 18 M.R.S.A. § 1056: "When a specific provision is made in a will for the widow * * * such * * * devisee may * * * make election * * * whether to accept said provision or claim the right and interest by descent; but is not entitled to both, unless it appears by the will that the testator * * * plainly so intended. * * * "

§ 1057: "[S]uch widow [electing to claim by descent] * * * shall * * * receive the same share * * * as is provided by law in intestate estates * * *."

the same, and it is both unsafe and unjust to interpret the will of one man by the dubious light of the construction given by a court of justice to the will of another." Perry v. Leslie, (1924) 124 Me. 93, 98, 126 A. 340, 343. *See also* Abbott v. Danforth, (1937) 135 Me. 172, 192 A. 544.

■ Diligence of counsel has failed to produce any authority dispositive of the precise issue here presented. We must, therefore, look to the language of the testamentary trust and, from it, determine the testator's intent as to the duration of the trust as it relates to the son.

When the will was executed the testator sought to protect his wife, son and daughter for a basic period of ten years. He anticipated that his wife might remarry following his death and his will, while eliminating her one-third share in the trust, did bequeath her 20% of the trust estate in lieu of her further participation therein.[3] The words in this bequest, "prior to the termination of this trust estate" obviously refer to some period within the first ten years of the trust.

The testator clearly had in mind, also, that his wife might not survive the preliminary ten year period, in which event her estate would have no right to participate further in the trust. He was aware of the fact that his wife had a daughter (testator's step-daughter) because he specifically bequeathed her $1,000.00.[4]

■ It becomes clear to us that the testator had in mind three contingencies which would make Plan 1 operative: (1) that the widow survive at least ten years; (2) that she be unremarried, and (3) that the corpus be undiminished by any action on her part. That the corpus be undiminished at the end of ten years ranked equally, in the mind of the testator, with the survival of his unremarried widow. He intended Plan 1 to become effective *only if* his widow received one-third of the corpus at the end of this period. The contingencies allowing the son's share of the trust to be held in toto under Plan 1 were *survival* and *non-remarriage* by the widow, and a *distribution to her then* of one-third of the corpus. She did survive unremarried but distribution, in administration of the trust, was legally prevented because of her waiver of the provisions of the will. Administratively, it was as if she were dead.

Plan 2 having become operative for the reasons stated, those represented by the guardian ad litem have no interest in the funds immediately distributable to Stewart G. Taylor, their interest being confined to his share of the trust retained until March 11, 1980.

The Trustees are, therefore, instructed to distribute to Stewart G. Taylor a sum equivalent to one-fourth of the corpus of said trust computed as of March 11, 1970, and to retain in trust the other one-fourth thereof for an additional period of ten years (March 11, 1980) in accordance with the terms of said trust.

The entry is

Remanded to the Superior Court for a decree in accordance with this opinion.

All Justices concurring.

---

3. "22. In the event my said wife, JENNIE M. TAYLOR, should remarry prior to the termination of this trust estate, I then instruct and direct my said Trustee or his successors to pay over unto her at the time of her remarriage, twenty (20%) percent of the then principal or corpus of this trust fund, and she shall thereafter have no further rights under the terms hereof."

4. "THIRD: I give and bequeath unto JEANETTE BRYANT the sum of One Thousand ($1,000.00) Dollars."